UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIN TESAR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No: 4:15CV943 HEA |
| | ) |
| UNION R-XI SCHOOL DISTRICT, et al., | ) |
| | ) |
| Defendants. | ) |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Gary Vogel. And Jennifer Davis' Motion to Dismiss Count III of Plaintiff's Amended Complaint, [Doc. No. 50] and Defendant Trakas' Motion to Dismiss Plaintiff's First Amended Complaint, [Doc. No. 44]. Plaintiff opposes the motions. On January 26, 2017, the Court heard oral arguments on the motions. For the reasons set forth below, the Motions are granted.

## **Facts and Background**

Plaintiff filed her First Amended Complaint on April 25, 2016. Plaintiff alleges violations of the Rehabilitation Act (Count I), of Titles II and V of the Americans with Disabilities Act, (Count II), an invasion of privacy claim under Missouri State Law against Defendants Davis, Vogel and Trakas in their official capacity, (Count III).

Defendants move to dismiss Count III arguing that Plaintiff has failed to sufficiently state a cause of action for common law invasion of privacy.

Plaintiff alleges the following with respect to her invasion of privacy claim:

In October of 2012, Plaintiff became the case manager for JT, a student at Clark-Vitt with a generalized anxiety disorder, ADHD and a learning disability in the areas of reading comprehension, reading fluency, math calculation, math reasoning and written expression. The foregoing are disabilities or handicaps as those terms are defined by the Rehabilitation Act and the ADA, as well as the Individuals with Disabilities Education Act, 20 U.S.C. §1401 *et seq*. JT's disabilities substantially interfered with major life activities, including attending school and learning.

On April 1, 2014, Erica Talley, the mother of JT, filed a due process complaint with the Missouri Department of Elementary and Secondary Education regarding the amount of time that JT would be outside of the regular classroom education. Because the District refused to provide CWC [Class Within Class] and inclusion services, all of the special education services the District proposed for JT were outside of the general education setting. Specifically, at an IEP meeting in March 2013, the District proposed to modify his IEP from spending only 33% of his education minutes outline the general education setting to 48%.

As JT's case manager, Plaintiff was in attendance at this IEP meeting along with Defendant Davis and Defendant Vogel. When questioned why JT could not receive some amount of instruction within the classroom using supplemental aides such as CWC or inclusion services, Dr. Davis replied, "We don't offer that." Mrs. Talley objected to the District's blanket refusal to provided CWC services and refusal to provide special education services to JT in his least restrictive environment. After the meeting, Plaintiff informed Mrs. Talley that the District would not offer CWC and inclusion services to students at Clark-Vitt for financial reasons as had been previously explained to her by Defendant's Vogel and Davis.

After filing her due process complaint, Mrs. Talley submitted her pre-hearing conference statement, pursuant to Regulation V(6) Missouri State Plan for Special Education Implementing Part B of the IDEA, to the Administrative Hearing Commission and to Defendants on April 11, 2013. In her pre-hearing conference statement, Mrs. Talley listed Plaintiff as a witness she intended to call during the due process hearing set for June 24, 2013. Specifically, Mrs. Talley indicated Plaintiff would testify:

…that a person of support within the classroom would allow [JT] to progress successfully…that Jennifer Davis stated on 3/20/13 that the school district does not offer CWC at his grade level and will testify to the lack of continuum services between the general education setting and pull out instruction and that on 3/22/13 Gary Vogel…stated that a CWC was not an option for [JT] due to services already being provided via pull out instruction against his current IEP…

On April 19, 2013 Defendants submitted their amended pre-hearing conference statement to Mrs. Talley and to the Administrative Hearing Commission. Defendants also identified Plaintiff as a witness who would be called for the District at the due process hearing. Defendants indicated Plaintiff would testify:

…regarding the District's regular and special education process and procedures, educational programming, communications regarding the student's programming, meetings of the student's IEP Team, educational records and data, observations regarding the student's progress and performance in special education provided by Ms. Tesar, the Case Management procedures for the student, the student's needs, and the proposed educational placement.

Defendants also identified the documents they intended to offer at the due process hearing in the Pre-Hearing Conference Statement; however, none of the documents identified had anything to do with Plaintiff or the contents of her personnel file.

After the Pre-Hearing Statements were filed, Plaintiff discussed Mrs. Talley's identification of her as witness as well as Mrs. Talley's description of Plaintiff's anticipated testimony with Defendant Davis, Defendant Vogel, Defendant Trakas and other agents for the District at various times. During these discussions, Defendants asked Plaintiff to testify that JT did not need CWC and inclusion services and that he would be better served in a special education setting. Plaintiff informed Defendants she did not agree with such an assessment and she believed JT's least restrictive environment for the special education minutes in question was the general education classroom with either CWC or inclusion instruction. Plaintiff informed Defendants she would not lie for the District in the course of her testimony.

On or about June 18, 2013, Defendants and Mrs. Talley exchanged their final witness list and copies of the exhibits they intended to use at the due process hearing. Defendant Trakas sent the witness list and exhibits to Mrs. Talley via facsimile, e-mail and certified mail. Defendants removed Plaintiff from the

District's witness list; however portions of Plaintiff's confidential personnel file were sent to Mrs. Talley as proposed "exhibits" for the District.

The portions of the file sent to Mrs. Talley included the incident report from November 12, 2012 and the recent negative evaluations and negative reports of "Educator Effectiveness" performed on Plaintiff. These confidential personnel documents were sent to Mrs. Talley without the consent by Plaintiff and Plaintiff never waived her right to privacy with regard to her employment records.

Upon receiving the exhibits, Mrs. Talley immediately notified Plaintiff as well as Union R-IX Board of Education members Karen Tucker and Virgil Weideman of the District's improper disclosure of Plaintiff's personnel records and of what Mrs. Talley believed to be the District's attempt to intimidate Plaintiff from testifying on JT's behalf.

Plaintiff was humiliated to learn that her confidential records, which included what she believed to be a false report of discrimination, had become public without her consent or knowledge. Plaintiff was further concerned that Defendants' disclosure would damage her reputation within the community and cause potential harm to her employment prospects as she had resigned from the District in 2013.

Defendants submitted the portions of Plaintiff's confidential personnel with the intent to intimidate and humiliate her. Defendants' actions would dissuade a reasonable employee from advocating for a student's rights under the IDEA, ADA, § 504 and the Civil Rights Act.

Defendants did not submit as exhibits any portions of the confidential personnel records of the five other District employees identified in Mrs. Talley's Pre-Hearing Conference Statement and on her witness list. However, Defendants did attempt to strike the only other witness identified on Mrs. Talley's witness list that was not on the District's payroll – her advocate Lindsey Traffas.

On June 20, 2013, after Mrs. Talley's notification to the Board and after the hearing officer denied the District's motion to strike Ms. Traffas' testimony, the District offered a resolution to Mrs. Talley to settle the due process matter that included every provision Mrs. Talley included in her due process complaint. The matter settled shortly thereafter.

While JT's due process matter was resolved, Plaintiff Erin Tesar has suffered, and continues to suffer emotional distress and anguish and loss of her civil rights as a

result of the foregoing actions and the pattern and practice of discrimination implemented by the District and its agents.

The District has implemented various policies regarding personnel records:

a.  The files of an individual employee will be considered confidential information and a closed record, to the extent allowed by the law, and will only be available to authorize administrative personnel, the Board of Education, and the employee. Individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment are closed records under the Missouri Sunshine Law to the extent allowed by law.
b.  Building administrators may maintain a working file on employees. All performance-related documents must be transferred to Central Office at the end of each year.
c.  Personnel records are closed, as authorized by law. Only authorized school officials shall have access to an employee's personnel records without the written consent of the employee.
d.  Board members will have access to an employee's personnel file only when necessary for Board business as determined by the Board.
e.  The Board members, employees and others in attendance are honor bound not to disclose the details or discussions of the closed meetings, records or votes or any other information that is deemed confidential by law, Board policy or district procedures. It is an essential job function of every employee in the district to follow confidentiality laws and the district's policies and procedures regarding confidential information. District employees who fail to keep closed information or closed meetings confidential may be disciplined or terminated… Board members who violate the law, Board policy or district procedures regarding confidentiality may be removed from all district committees and publicly admonished by the Board, and the Board may take legal action against the member by seeking an injunction or monetary damages. The Board may also seek legal action from the local prosecutor or the Missouri Attorney General's Office. In addition, it is a crime, punishable by a fine of up to $500 or a year in jail, for any School Board member or employee of a school district to willfully neglect or refuse to perform a duty imposed by certain state statutes applicable to school districts, some of which contain confidentiality requirements.

All Board members, employees, students and patrons are required to follow the Board of Education's policies and the district's rules and procedures.

The principal or director will ensure that the Board policies, rules, and regulations…are observed.

By June 18, 2013, well after the end of the 2012-2013 school year, any performance related documents maintained by Defendant Vogel and Defendant Davis should have been transferred to the Central Office.

After the 2012-2013 school year ended, neither Defendant Vogel, Davis, nor Defendant Trakas had authorization to access Plaintiff's personnel file.

Plaintiff Defendants Vogel, Davis, and Trakas unreasonably obtained portions of Plaintiff's personnel file and published those documents without Plaintiff's consent.

The documents were in turn disseminated to members of the Board of Education absent a formal request from the Board to review the documents for the purpose of Board business.

The portions of Plaintiff's personnel file that were unreasonably obtained and published by Defendants had a likelihood of becoming public knowledge at the time of their dissemination.

Defendants Vogel, Davis, and Trakas obtained and published Plaintiff's personnel file maliciously and in bad faith.

Missouri has recognized the common law tort of invasion of privacy since 1911. *Munden v. Harris*, 153 Mo.App. 652, 659-60, 134 S.W. 1076, 1078 (1911); *see also Barber v. Time, Inc.*, 348 Mo. 1199, 159 S.W.2d 291 (1942).

Plaintiff has a fundamental right to privacy in her employment records. *State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner*, 239 S.W.3d 608, 609 (Mo. 2007) (citing *State ex rel. Crowden v. Dandurand*, 970 S.W.2d 340, 343 (Mo. banc 1998) and *State ex rel. Tally v. Grimm*, 722 S.W.2d 604, 605 (Mo. banc 1987)).

Plaintiff's employment records contain secret and private information.

Defendants invaded Plaintiff's fundamental right to privacy when they improperly intruded upon those protected records and improperly obtained the confidential information contained therein.

Defendants further invaded Plaintiff's fundamental right to privacy when they published, or caused to be published, documents containing private facts concerning Plaintiff, that had a likelihood of becoming public knowledge.

Plaintiff did not give Defendants permission to invade her privacy in this manner nor did Plaintiff waive her right to privacy regarding the published information.

The conduct of Defendants was offensive and motivated by a desire to cause her humiliation and shame.

## Discussion

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir.2001) *quoting Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007)(abrogating the prior "no set of facts" standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.,* 550 U.S. at

555. A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." *Id*. However, where a court can infer from those factual allegations no more than a "mere possibility of misconduct", the complaint must be dismissed. *Cole v. Homier Distributing Co., Inc.,* 599 F.3d 856, 861 (8th Cir.2010)(*citing Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868.1950 (2009)).

In passing on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232 (1974); *Kottschade v. City of Rochester,* 319 F.3d 1038, 1040 (8th Cir.2003). While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Twombly,* 550 U.S. at 555. (internal citations omitted). "Although the pleading standard is liberal, the plaintiff must allege facts—not mere legal conclusions—that, if true, would support the existence of the claimed torts." *Moses.com Securities v. Comprehensive Software Systems, Inc.,* 406 F.3d 1052, 1062 (8th Cir.2005) *citing Schaller Tel. Co. v. Golden Sky Systems,* 298 F.3d 736, 740 (8th Cir.2002). In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. *Bennett v. Berg,* 685

F.2d 1053, 1058 (8th Cir.1982). The primary issue for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but whether the complaint adequately states a claim; and therefore, the plaintiff is entitled to present evidence in support of that claim. A complaint may not be dismissed based upon a district court's assessment that the plaintiff will fail to present evidentiary support for the complaint's allegations or will ultimately fail to prove one or more claims to the satisfaction of the factfinder. *Twombly,* 550 U.S. at 556; *Neitzke v. Williams,* 490 U.S. at 327 ("What Rule 12(b)(6) does not countenance are dismissals based upon a judge's disbelief of a complaint's factual allegations."). However, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.,* 524 F.3d 866, 870 (8th Cir. 2008). Further, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868.1950 (2009)(*quoting Twombly,* 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 129 S.Ct. at 1950. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id*.

Count III attempts to assert a state law claim for invasion of privacy. Plaintiff alleges that Defendants invaded her privacy when they improperly intruded upon her protected employment records, improperly obtained confidential information in them and when they disseminated documents containing private facts to the public.

Under Missouri law, "[a]n individual's right of privacy is legally protected, and violation of such right can under given circumstances provide an entitlement to relief." *Sofka v. Thal*, 662 S.W.2d 502, 509 (Mo. banc 1983). The right of privacy is invaded when there is "(1) unreasonable intrusion upon the seclusion of another; or (2) appropriation of the other's name or likeness; or (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public." *Id.* at 510. In *Howard v. Frost National Bank*, 458 S.W.3d 849 (Mo.App.E.D. 2015), the Court stated:

> The tort of invasion of privacy actually consists of four separate causes of action, (1) intrusion on the plaintiff's seclusion or private affairs; (2) public disclosure of embarrassing private facts; (3) publically placing plaintiff in a false light; and (4) the appropriation of plaintiff's name or likeness. *St. Anthony's Medical Center v. H.S.H.*, 974 S.W.2d 606, 609 (Mo.App.E.D. 1998).

*Id*. at 854.

Plaintiff attempts to allege claims of invasion of her right to privacy through the unreasonable intrusion on her private affairs and public disclosure of embarrassing private facts.

The tort of invasion of privacy includes the "unreasonable intrusion upon the seclusion of another," which is defined as the intentional intrusion "physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns" in a manner that would be "highly offensive to a reasonable person." *Sofka*, 662 S.W.2d at 510. To establish a claim of unreasonable intrusion upon seclusion, a plaintiff must prove "(1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means." *Ruzicka Elec. & Sons, Inc. v. Int'l Bhd. of Elec. Workers, Local 1, AFL-CIO*, 427 F.3d 511, 524 (8th Cir. 2005) (citing *Corcoran v. Southwestern Bell Telephone Co.*, 572 S.W.2d 212, 215 (Mo. Ct. App. 1978)).

Plaintiff's Amended Complaint fails to set forth sufficient facts to state a claim for unreasonable intrusion. The only allegations regarding Plaintiff's personnel file are that Defendants improperly intruded upon her protected records and improperly obtained the confidential information contained therein. There are no allegations as to how the records were obtained, or how the obtaining of the records was unreasonable. Rather, Plaintiff's allegations are conclusions; clearly a

formulaic recitation of the elements of an invasion of privacy. As such, the claim fails to satisfy the pleading requirements of the Federal Rules of Civil Procedure.

With respect to Plaintiff's claim that Defendants published her private personnel file, Defendants' Motions are well taken.

In order to state a claim for public disclosure of private facts, Plaintiff must plead that there was: "(1) publication or publicity by the defendant, to a large number of persons; (2) the absence of a grant to the defendant of any waiver or privilege; (3) the disclosure of private matters in which the public has no legitimate concern; and (4) disclosure in such a way as to bring shame or humiliation to an individual of ordinary sensibilities." *Maxwell v. Express Scripts, Inc.*, 2012 WL 996651 at *7, citing *Y.G. v. Jewish Hosp. of St. Louis,* 795 S.W.2d 488, 498–99 (Mo.Ct.App.1990). "Under the first element, publication means communication to the public in general or to a large number of persons, as distinguished from one individual or a few." *Doe v. Young,* 2009 WL 3680988, at *8 (E.D.Mo. Oct.30, 2009) (internal quotation marks and citations omitted). *McNeil v. Best Buy Co.*, No. 4:13CV1742 JCH, 2014 WL 1316935, at *3 (E.D. Mo. Apr. 2, 2014). Plaintiff claims that the information contained in her personnel record was distributed to Mrs. Talley, who in turn possibly disclosed the records to two Board of Education members, or at least disclosed that the records were given to her. Such disclosure does not rise to the level of the public in general or a large number

of persons. Likewise, Plaintiff's speculation that the entire Board was made aware of the disclosure does not qualify as a publication of Plaintiff's private matters.

"The alleged threat of some future publication is too speculative to state a claim, *see, e.g., Robinson v. Morgan Stanley,* 2008 WL 4874459, at * 6 (N.D.Ill. Jun.18, 2008) and *Wynn v. Wachovia Bank, N.A.,* 2009 WL 1255464, at *4 (E.D.Va. May 6, 2009) (both addressing the tort of defamation), and so Plaintiff's claim for public disclosure of private facts must be dismissed."
*McNeil v. Best Buy Co.,* No. 4:13CV1742 JCH, 2014 WL 1316935, at *4 (E.D. Mo. Apr. 2, 2014).

## Conclusion

Based upon the foregoing, the Court concludes that the Defendants Gary Vogel, And Jennifer Davis' Motion to Dismiss Count III of Plaintiff's Amended Complaint and Defendant Trakas' Motion to Dismiss are well taken and should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Gary Vogel and Jennifer Davis' Motion to Dismiss Count III of Plaintiff's Amended Complaint, [Doc. No. 50], is **granted.**

**IT IS FURTHER ORDERED** that Defendant Trakas' Motion to Dismiss, [Doc. No. 44], is **granted.**

**IT IS FURTHER ORDERED** that Defendant Trakas is dismissed from this action.

Dated this 9th day of February, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE